**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURMEET SINGH,<br><br>    Petitioner,<br><br>    v.<br><br>MERRICK GARLAND, et al.,<br><br>    Respondents. | Case No. 1:23-cv-01043-EPG-HC<br><br>ORDER GRANTING IN PART PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(ECF No. 2) |

Petitioner Gurmeet Singh, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 9, 12.) For the reasons set forth herein, the Court orders that Petitioner's motion for temporary restraining order is granted in part.

**I.**

**BACKGROUND**

Petitioner is from India and first entered the United States in May 1988 when he was eight years old as a lawful permanent resident. (ECF No. 2-2 at 2; ECF No. 8 at 3; ECF No. 8-1 at 2; ECF No. 8-2 at 2.)[1] Petitioner was convicted of conspiring to distribute and possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (B)(1)(A), and 846. (ECF No.

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

1  8 at 3; ECF No. 8-2 at 43–44, 46.) Petitioner ultimately was sentenced to an imprisonment term
2  of 150 months. (ECF No. 8 at 3; ECF No. 8-2 at 52.) In June 2020, Petitioner was convicted of
3  assault with a semiautomatic firearm, in violation of California Penal Code section 245(b).
4  Petitioner was sentenced to an imprisonment term of three years. (ECF No. 8 at 3; ECF No. 8-2
5  at 7.)

6  Upon Petitioner's release from prison on August 2, 2021, U.S. Immigration and Customs
7  Enforcement ("ICE") detained Petitioner under 8 U.S.C. § 1226(c). (ECF No. 8 at 3.) Petitioner
8  is currently detained at the Golden State Annex facility in McFarland, California. (ECF No. 2-2
9  at 2; ECF No. 8 at 3.) ICE initiated removal proceedings against Petitioner pursuant to 8 U.S.C.
10 §§ 1227(a)(2)(A)(iii) and (B)(i). (ECF No. 8 at 3.)

11 At a hearing on September 23, 2021, the Immigration Judge ("IJ") sustained the charge of
12 removability and Petitioner filed his application for relief. (ECF No. 8 at 3;  ECF No. 8-1 at 3–4.)
13 On November 19, 2021, the IJ denied relief and ordered Petitioner be removed to India. (ECF
14 No. 8 at 4; ECF No. 8-1 at 4, ECF No. 8-2 at 72.) On December 23, 2021, Petitioner
15 administratively appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (ECF
16 No. 8 at 4; ECF No. 8-1 at 4.) On February 2, 2023, the BIA dismissed Petitioner's appeal. (ECF
17 No. 8 at 4; ECF No. 8-2 at 77–78.) On March 3, 2023, Petitioner filed a petition for review and
18 motion to stay removal in the United States Court of Appeal for the Ninth Circuit. (ECF No. 8 at
19 4.) A temporary stay of removal remains in effect. The government's answering brief was due on
20 September 5, 2023, and Petitioner's reply brief is due twenty-one days after service of the
21 answering brief. (Id.)

22 Upon entering Department of Homeland Security ("DHS") custody, DHS conducted a
23 custody redetermination and concluded that detention was warranted because Petitioner
24 constituted a threat to public safety if released. (ECF No. 8-1 at 3–4; ECF No. 8-2 at 55–57.) On
25 June 28, 2023, the IJ denied Petitioner's request for a custody redetermination because the IJ did
26 not have jurisdiction. (ECF No. 8-1 at 4; ECF No. 8-2 at 58–59.)

27 On July 12, 2023, Petitioner filed a petition for writ of habeas corpus and the instant
28 motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) Petitioner alleges that he has

been detained since August 2, 2021, and has not been afforded a bond hearing. Petitioner asserts that his prolonged detention violates his Fifth and Eighth Amendment rights and requests a temporary restraining order that secures his immediate release, or in the alternative, a bond hearing. (ECF No. 2 at 1–2.) Respondents filed an opposition to the motion for TRO, and Petitioner filed a reply. (ECF Nos. 8, 9.)

## II.

## DISCUSSION

### A. Temporary Restraining Order Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."[2] Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party must appear to defend"). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Glossip v. Gross, 576 U.S. 863, 876 (2015) (internal quotation marks omitted) (quoting Winter, 555 U.S. at 20). "Under Winter, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

### B. Immigration Detention Statutes and Bond Hearings

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the

---

[2] "The standard for a [temporary restraining order] is the same as for a preliminary injunction." Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).

necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Here, Petitioner is detained pursuant to 8 U.S.C. § 1226(c),[3] which provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> >
> > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> >
> > (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[1] to a term of imprisonment of at least 1 year, or
> >
> > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the

---

[3] The Ninth Circuit has "conclude[d] that Subsection C applies throughout the administrative and judicial phases of removal proceedings." Avilez v. Garland, 69 F.4th 525, 535 (9th Cir. 2023).

government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit

1    applied the canon of constitutional avoidance to interpret these immigration detention provisions
2    as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez
3    Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).
4        In Jennings v. Rodriguez, 138 S. Ct. 830 (2018), the Supreme Court found the Ninth
5    Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of
6    mandatory detention" fell "far short of a 'plausible statutory construction,'" and held that the
7    Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8
8    U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General
9    must prove by clear and convincing evidence that the alien's continued detention is necessary."
10   Jennings, 138 S. Ct. at 846, 842, 847–48. The case was remanded to the Ninth Circuit "to
11   consider [the] constitutional arguments on their merits." Id. at 851. The Ninth Circuit likewise
12   remanded the case to the district court to consider the constitutional arguments in the first
13   instance but observed that it had "grave doubts that any statute that allows for arbitrary
14   prolonged detention without any process is constitutional or that those who founded our
15   democracy precisely to protect against the arbitrary deprivation of liberty would have thought
16   so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).
17       There has been "a dearth of guidance regarding the point at which an individual's
18   continued mandatory detention under Section 1226(c) becomes unconstitutional." Gonzalez v.
19   Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019). See Rodriguez
20   Diaz, 53 F.4th at 1201, 1203 (observing that "it remains undetermined whether the Due Process
21   Clause requires additional bond procedures under *any* immigration detention statute," and noting
22   that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide
23   constitutional challenges to bond hearing procedures in the immigration detention context"). The
24   Ninth Circuit has yet to take a position on whether due process requires a bond hearing for
25   noncitizens detained under 8 U.S.C. § 1226(c), but it has recognized that "district courts
26   throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens
27   held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to
28   one such court order, the 'prolonged mandatory detention pending removal proceedings, without

a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted).

### C. Likelihood of Succeeding on the Merits

As Petitioner is seeking a temporary restraining order, he must establish "that he is likely to succeed on the merits" of his due process claim. Winter, 555 U.S. at 20. Petitioner contends that "[d]etention without a bond hearing is unconstitutional when it exceeds six months," and "[e]ven if a bond hearing is not required after six months in every case, at a minimum, due process requires a bond hearing after detention has become unreasonably prolonged." (ECF No. 2-2 at 6, 7.) Petitioner notes that "[c]ourts that apply a reasonableness test have considered three main factors in determining whether detention is reasonable": (1) "whether the noncitizen has raised a 'good faith challenge to removal'"; (2) the length of detention, "with detention presumptively unreasonable if it lasts six months to a year"; and (3) "the likelihood that detention will continue pending future proceedings." (ECF No. 2-2 at 7–8.) In the opposition, "Respondents submit that the appropriate test is similar to that which this Court previously applied in *Lopez*, 631 F. Supp. 3d at 879," which "considers three factors: (1) the total length of detention to date, (2) the likely duration of future detention, and (3) the delays in the proceedings caused by the petitioner and the government." (ECF No. 8 at 10.) In the reply, Petitioner argues that even under the three-part Lopez test, "Petitioner's detention has become so unreasonably prolonged that an initial bond hearing is required." (ECF No. 9 at 7.)

Courts in the Ninth circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular case. See, e.g., Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (applying a bright-line rule "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing"); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal"); Juarez v. Wolf, No. C20-

1  1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition
2  to six factors set forth above, "whether the detention will exceed the time the petitioner spent in
3  prison for the crime that made him [or her] removable" and "the nature of the crimes the
4  petitioner committed"), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash.
5  June 7, 2021).

6        Respondents argue that the appropriate test is one previously applied by a judge in this
7  district, which looks to "the total length of detention to date, the likely duration of future
8  detention, and the delays in the removal proceedings caused by the petitioner and the
9  government" to determine whether detention pursuant to 8 U.S.C. § 1226(c) has become
10 unreasonable. Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022), appeal dismissed
11 per stipulation, No. 22-16831, 2023 WL 2240474 (9th Cir. Jan. 17, 2023).

12       There are also some courts that apply the three-part test set forth in Mathews v. Eldridge,
13 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL
14 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted,
15 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz,[4] which concerned a noncitizen
16 detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional
17 because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond
18 hearing at which the government bears the burden of proof by clear and convincing evidence,"
19 the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the
20 Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal
21 proceedings," and finding "*Mathews* remains a flexible test that can and must account for the
22 heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53
23 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v.*
24 *Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework
25 to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219
26 (Wardlaw, J., dissenting). Some courts look to whether the petitioner is requesting an initial bond

---

[4] The Court notes that a petition for panel rehearing and rehearing en banc has been filed. See Petition for Panel Rehearing and Petition for Rehearing En Banc, Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022) (No. 20-16245), ECF No. 104.

hearing or a second bond hearing in deciding whether to apply the Mathews test because "[w]hile the Mathews factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." Djelassi v. ICE Field Office Dir., No. C19-491-RSM, 2020 WL 263670, at *2 (W.D. Wash. Jan. 17, 2000) (quoting Banda, 385 F. Supp. 3d at 1118).

Here, Petitioner is detained pursuant to §1226(c) and is requesting an initial bond hearing. Given the uncertainty regarding the appropriate test, in an abundance of caution the Court will apply the Mathews test, the Lopez test, and the three factors set forth by Petitioner in the motion for TRO.

1. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest

under *Mathews*." (quoting Singh, 638 F.3d at 1208)). Accordingly, the first Mathews factor weighs in favor of Petitioner.

With respect to the second factor, the Court finds that the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards is high given that Petitioner has not received any bond hearing during his two-year detention. See Jimenez v. Wolf, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) ("[T]he risk of an erroneous deprivation of Landeros Jimenez's liberty interest is high. He has not received any bond or custody redetermination hearing during his one-year detention. Thus, the probable value of additional procedural safeguards—a bond hearing—is high, because Respondents have provided virtually no procedural safeguards at all."). Accordingly, the second Mathews factor weighs in favor of Petitioner.

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). However, it is important to stress that the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz, 2020 WL 1862254, at *7. See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a)

detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers"). Accordingly, the third Mathews factor weighs in favor of Petitioner.

Based on the foregoing, the Court finds that each of the factors weighs in favor of Petitioner. Petitioner is therefore likely to succeed on the merits of his due process claim under the Mathews test.

2. *Lopez* Test

Under Lopez, the Court looks to "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" to determine whether detention pursuant to 8 U.S.C. § 1226(c) has become unreasonable. Lopez, 631 F. Supp. 3d at 879.

### a. Total Length of Detention to Date

Respondent contends that while Lopez "simply counted the number of months of detention and declined to give any consideration to the history or procedural posture of the removal litigation," this Court should not follow suit given Rodriguez Diaz, which noted that "turning such a blind eye to the history and procedural posture of the removal litigation necessarily taints a prolonged detention analysis, as simply counting up time would illogically result in rendering the statutory detention scheme 'unconstitutional as to most any alien who elects to challenge a removal order, given the amount of time such a typical[] challenge takes.'" (ECF No. 8 at 11 (alteration in original) (quoting Rodriguez Diaz, 53 F.4th at 1207).) Lopez rejected a similar argument, noting that

> [i]n upholding the constitutionality of mandatory detention under 8 U.S.C. § 1226(c), Demore relied on the "brief" and "very limited time of the detention," repeatedly referring to the brevity of § 1226(c) detention throughout the opinion and observing that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked," which is "less than the 90 days we considered presumptively valid in Zadvydas," and "about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 513, 529 & n.12, 530, 123 S.Ct. 1708. See Muse v. Sessions, 409 F. Supp. 3d 707, 714–15 (D. Minn. 2018) (rejecting the government's contention "that the Due Process Clause permits detention of an alien for the entire duration of removal proceedings so long as the government acts in

11

>good faith and does not engage in dilatory conduct"); Martinez, 2019 WL 5968089, at *8 (declining to adopt the government's argument "that regardless of the length of detention without a bond hearing, detention remains constitutional so long as there is no unreasonable delay by the Government") (collecting cases).

Lopez, 631 F. Supp. 3d at 880. Like Lopez, the Court does not find Respondent's argument persuasive and will look to the total length of detention to date.

Here, Petitioner has been in immigration detention since August 2, 2021, approximately twenty-five months. District courts have found significantly shorter lengths of detention pursuant to § 1226(c) to be unreasonable. See Lopez, 631 F. Supp. 3d at 879 (granting habeas relief and ordering individualized bond hearing for petitioner detained approximately one year and citing cases where detentions of two months, eight months, and eleven months were found unreasonable). In Rodriguez Diaz, the Ninth Circuit "assume[d]" that fourteen months of detention without a bond hearing "qualifies as 'prolonged' in a general sense." 53 F.4th at 1207. "In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez, 2019 WL 330906, at *3 (alteration in original) (quoting Muse, 409 F. Supp. 3d at 716). Here, Petitioner has been detained for two years. Accordingly, the Court finds that the first Lopez factor weighs in favor of Petitioner.

### b. Likely Duration of Future Detention

Respondents contend that "[j]udicial review of [Petitioner's] removal order in the circuit court is proceeding promptly and the parties' remaining briefs will be filed within the next few months," the "circuit court will likely issue a decision shortly thereafter, which will end the litigation over Petitioner's removal order," and thus, "this factor also weighs in favor of Respondents." (ECF No. 8 at 12, 13.) Although the Court recognizes, as noted by Respondents, that Petitioner's detention under § 1226(c) has "a definite termination point," Demore, 538 U.S. at 529, the Court finds that judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner.[5] See Sanchez-Rivera v. Matuszewski, No. 22-cv-

---

[5] The Ninth Circuit's public website provides that oral argument in a civil case takes place approximately six to twelve months from the notice of appeal or approximately four months from completion of briefing. Additionally, the Ninth Circuit may take three months to a year to decide the case after oral argument. See U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited Sept. 7, 2023).

1357-MMA (JLB), 2023 WL 139801, at *6 (S.D. Cal. Jan. 9, 2023) (finding that "Petitioner's appeal of his removal order to the Ninth Circuit will likely be 'sufficiently lengthy such that this factor weighs in favor of Petitioner'" (citation omitted)); Zagal-Alcaraz, 2020 WL 1862254, at *4 (finding that "Petitioner will remain in custody for a sufficiently lengthy period of time to justify a bond hearing" when Petitioner intended to file a petition for reconsideration with the Ninth Circuit). Accordingly, the Court finds that the second Lopez factor weighs in favor of Petitioner.

### c. Delays Caused by Petitioner and the Government

On August 24, 2021, Petitioner appeared for a removal hearing before an IJ and requested that his case be reset to allow him time to consult with his attorney. On August 26, 2021, Petitioner appeared for a removal hearing and requested a continuance to allow him time to file an application for relief. (ECF No. 8-1 at 3.) In his administrative appeal with the BIA, Petitioner requested an extension of time to file a brief in support of his appeal. (Id. at 4.) There is no indication that these delays were made in bad faith and Respondents acknowledge that any delay was "modest[]." (ECF No. 8 at 13.) Accordingly, the Court finds that the third Lopez factor weighs in favor of Respondents.

In sum, both the length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118, and the likely duration of future detention weigh in favor of finding continued detention unreasonable. Although the delay factor weighs in favor of Respondents, "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) (citing Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition")). "[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process." Henriquez, 2022 WL 2132919, at *5. Based on the

foregoing, Petitioner is likely to succeed on the merits of his due process claim under the Lopez test.

    3.  Petitioner's Three Factors

In the motion for TRO, Petitioner submits that "[c]ourts that apply a reasonableness test have considered three main factors in determining whether detention is reasonable": (1) "whether the noncitizen has raised a 'good faith challenge to removal'"; (2) the length of detention, "with detention presumptively unreasonable if it lasts six months to a year"; and (3) "the likelihood that detention will continue pending future proceedings." (ECF No. 2-2 at 7–8.)

With respect to the first factor, Petitioner contends that he "has raised a good faith challenge to his removal" and "is pursuing a petition for review before the Ninth Circuit Court of Appeals." (ECF No. 2-2 at 8.) Respondents have not addressed this factor. As there is nothing before the Court indicating that Petitioner is acting in bad faith in challenging his removal, the Court finds this factor weighs in favor of Petitioner. As set forth in section II(C)(2), *supra*, the Court has found that the total length of detention and likely duration of future detention factors both weigh in favor of Petitioner. Petitioner is therefore likely to succeed on the merits of his due process claim under the factors set forth by Petitioner in the motion for TRO.

Based on the foregoing, the Court finds that Petitioner is likely to succeed on the merits of his due process claim regardless of whether the Court applies the Mathew test, the Lopez test, or the three factors set forth in the motion for TRO.

**D.  Likelihood of Suffering Irreparable Harm**

"In addition to a likelihood of success on the merits, '[a] plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief.'" Hernandez, 872 F.3d at 994 (quoting Winter, 555 U.S. at 20). In Hernandez, the Ninth Circuit found the district court did not abuse its discretion in entering an injunction that required immigration officials to consider financial circumstances and alternative conditions of release at the bond hearings of a class of noncitizens in removal proceedings who were detained pursuant to 8 U.S.C. § 1226(a). Hernandez, 872 F.3d at 981–82. With respect to the second Winter factor, the Ninth Circuit found:

> Here, Plaintiffs have established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time.
>
> "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Thus, it follows inexorably from our conclusion that the government's current policies are likely unconstitutional—and thus that members of the plaintiff class will likely be deprived of their physical liberty unconstitutionally in the absence of the injunction—that Plaintiffs have also carried their burden as to irreparable harm.

Hernandez, 872 F.3d at 994–95. Similarly, here, the Court has concluded that Petitioner is likely to succeed on the merits of his due process claim, and thus, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time" in the absence of preliminary relief. Id. at 994. See Baird v. Bonta, No. 23-15016, --- F.4th ----, 2023 WL 5763345, at *3 (9th Cir. Sept. 7, 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation."); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. 1998) ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").

### E. Balance of Equities and the Public Interest

To obtain a temporary restraining order, Petitioner must also demonstrate that "the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." Baird, 2023 WL 5763345, at *4. "Because 'public interest concerns are implicated when a constitutional right has been violated, . . . all citizens have a stake in upholding the Constitution,' meaning 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" Id. (first quoting Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005); then quoting Riley's American Heritage Farms v.

1   Elsasser, 32 F.4th 707, 731 (9th Cir. 2022)). "The government also 'cannot reasonably assert
2   that it is harmed in any legally cognizable sense by being enjoined from constitutional
3   violations.'" Baird, 2023 WL 5763345, at *4 (quoting Zepeda v. INS, 753 F.2d 719, 727 (9th
4   Cir. 1983)) (citing Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that the
5   government "cannot suffer harm from an injunction that merely ends an unlawful practice"
6   implicating "constitutional concerns")). Accordingly, the Court finds that the balance of equities
7   tips in Petitioner's favor and that a TRO is in the public interest.
8       Based on the foregoing, Petitioner has shown that he is likely to succeed on the merits of
9   his due process claim, that he will suffer irreparable harm in the absence of a TRO, that the
10  balance of equities tips in his favor, and that a TRO is in the public interest. Therefore, the Court
11  will grant Petitioner's motion for TRO in part.
12      **F. Remedy**
13      Here, Petitioner "requests a temporary restraining order that secures his immediate
14  release or in the alternative, a bond hearing" before a neutral decisionmaker. (ECF No. 10 at 13.)
15  Respondents contend that "the only appropriate relief is a bond hearing, not release from
16  detention." (ECF No. 8 at 14.) Petitioner has not provided authority to support his contention that
17  he is entitled to immediate release. "The Court finds, consistent with other post-Jennings cases,
18  that the appropriate remedy is a bond hearing before an immigration judge rather than immediate
19  release." Lopez, 631 F. Supp. 3d at 882 (collecting cases).
20      The Court now turns to the burden of proof at the bond hearing and which party should
21  bear such burden. Petitioner argues that the government must bear the burden of proof by clear
22  and convincing evidence that the noncitizen is a danger or flight risk, citing to Singh v. Holder,
23  638 F.3d 1196, 1203 (9th Cir. 2011). (ECF No. 10 at 9.) Respondents contend that "the burden at
24  any such bond hearing is properly placed on Petitioner," noting that Rodriguez Diaz questioned
25  whether placing the burden of proof on the government was constitutionally required. (ECF No.
26  8 at 15.)
27      Having "previously applied the canon of constitutional avoidance to interpret . . .
28  immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a statutory

right to a bond hearing once detention becomes prolonged," the Ninth Circuit in <u>Singh</u> "concluded that for these hearings to comply with due process, the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." <u>Rodriguez Diaz</u>, 53 F.4th at 1196 (citing <u>Singh</u>, 638 F.3d at 1203–05). Although <u>Rodriguez Diaz</u> may have declined to impose the standard articulated in <u>Singh</u>, <u>Rodriguez Diaz</u> is distinguishable because it considered whether the Due Process Clause entitled a petitioner to a *second* bond hearing at which the government bears the burden of proof by clear and convincing evidence in the § 1226*(a)* context. <u>Rodriguez Diaz</u>, 53 F.4th at 1203. Further, the panel majority specifically stated that it was not "decid[ing] whether <u>Singh</u> remains good law in any respect following <u>Jennings</u>" and even recognized that <u>Singh</u> was based "on general principles of procedural due process, reasoning that a detained person's liberty interest is substantial." <u>Rodriguez Diaz</u>, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has suggested post-<u>Jennings</u> that <u>Singh</u> remains good law in <u>Martinez v. Clark</u>, which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," but did address "the scope of federal court review of those bond determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." <u>Martinez</u>, 36 F.4th at 1223, 1231.

   The Court will follow the "overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community," <u>Sanchez-Rivera</u>, 2023 WL 139801, at *7, even post-<u>Rodriguez Diaz</u>. See, e.g., <u>Rodriguez Picazo v. Garland</u>, No. 23-cv-02529-AMO, 2023 WL 5352897, at *6–7 (N.D. Cal. Aug. 21, 2023); <u>J.P. v. Garland</u>, No. 23-cv-00612-AMO, 2023 WL 5059524, at *5 (N.D. Cal. Aug. 7, 2023); <u>Pham v. Becerra</u>, No. 23-cv-01288-CRB, 2023 WL 2744397, at *7 (N.D. Cal. Mar. 31, 2023); <u>Doe v. Garland</u>, No. 3:22-cv-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023).

///

///

## III.
## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. Petitioner's motion for temporary restraining order (ECF No. 2) is GRANTED in part;
2. Within **thirty (30) days** of the date of service of this order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203.

IT IS SO ORDERED.

Dated: **September 8, 2023**          /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE